WILLIAMS *v.* STATE.

(Division B. April 15, 1940.)

[195 So. 338. No. 34012.]

J. V. Gipson and C. L. Denton, both of Meridian, for appellant.

**Russell Wright,** Assistant Attorney-General, for appellee.

McGehee, J., delivered the opinion of the court.

The appellant, a negro woman, was indicted and tried for the murder of another negro woman, Pearl Scott, and was convicted of manslaughter and sentenced to serve a term of fifteen years in the state penitentiary; and from which judgment of conviction and sentence she appeals.

The proof on behalf of the State discloses that in the early part of the night on which the killing occurred, the deceased, Pearl Scott, left her home and went to a picture show in company with other persons and did not return until about 11:30 P. M., when she was met by the appellant at the front of the house and cut to death with a knife. Appellant and an eighteen year old son of the deceased were at the house at the time the deceased left to go to the picture show, but they later visited some places for awhile where drinks were sold and nickelodeons played, and then returned to the home of the deceased shortly before her return from the show. The eighteen year old son, John Scott, Jr., then retired in his bedroom, and he claims that the appellant pulled off her coat and lay down on the bed in another room usually occupied by his mother; that, within twenty or thirty minutes thereafter, upon his mother's return, he heard the appellant run out of the front door and off of the porch, meeting her; and that immediately he heard his mother call out to the appellant, "don't cut me with that knife." He then ran out, saw his mother lying on the ground, and thereupon engaged in a fight with the appellant when she advanced toward him. He struck her with his fist and knocked the knife out of her hand into a ditch, where he found it on the next morning. The appellant admitted that the knife found in the ditch belonged to her, but claimed that the deceased was trying to get her hand into a pocket at the time she cut her. Later, a small knife was found in the deceased's pocket, but it was unopened.

The witnesses for the State further testified that while the said Pearl Scott was at the picture show, the appellant was seen sharpening a knife at one of the places she had visited—the "Blue Nose;" and was heard to make various threats of violence within an hour or two of the killing, and some of which were shown to have been made toward the deceased. Under all of the evidence, the issue of whether the facts surrounding the killing constituted the crime of murder was properly submitted to the jury, and under correct instructions, but with the result that the jury convicted the appellant only of manslaughter.

It is urged, however, that the court below erred in admitting certain prejudicial testimony for the State over the objection of the appellant. The witness, John Scott, Jr., was asked upon cross-examination: whether it was not true that his mother, the deceased, had been engaged in selling whiskey at her home, and he replied "Mamma sold liquor and Patty (meaning the defendant) did too." Q. "They both sold it?", and he replied "Yes, sir." Thereafter, appellant's counsel moved to exclude this testimony, and the motion was overruled. Although the statement volunteered by the witness to the effect that the appellant also sold liquor was incompetent and irrelevant on the issue being tried, and should have been excluded, we do not think that it could have influenced the verdict to any extent whatever under the facts of this case.

Next, the State, in an effort to show a motive for the killing, introduced certain testimony, which is too vulgar and indecent to be set forth in this opinion and reported in the books, and which was offered for the purpose of showing that the appellant was jealous of the deceased, and that she was therefore angry because she had gone off with other persons to the picture show that evening and had not returned until the late hour hereinbefore mentioned. In that behalf, witnesses for the State quoted the appellant, over her objection, as

having made statements to them in support of such a theory. However, even if such testimony had been incompetent, we are of the opinion that it did not materially affect the verdict of the jury, unless it can be said that it resulted in a conviction of manslaughter instead of murder, since the State's theory, in that regard was so completely refuted by medical testimony, which was without substantial dispute, that it was rendered wholly unbelievable as substantive proof on the question of motive, or for any other purpose. A discussion of the sordid details of this theory and attempted proof, and of the facts in refutation thereof clearly established by the defense, can serve no good purpose. Suffice it to say, the facts testified to, as to what occurred on the occasion of the killing itself, are such, in our opinion, as to preclude the idea that the testimony referred to was a factor in causing or influencing the jury to reach the verdict rendered, unless, as heretofore stated, its effect was to bring about a conviction of the lesser offense than that charged in the indictment. This being true, we are unable to hold that the admission of the testimony objected to constitutes reversible error. The judgment must therefore be affirmed.

Affirmed.